ALBANY,<br>Oct. 1827.<br><br>Ring<br>v.<br>Wheeler.

---

## RING *against* WHEELER.

MOTION in arrest of judgment, on the ground that several counts of the declaration, which contained 16 counts in *Words charging a witness with perjury.*

party or his counsel, in the course of a trial, may or may not be actionable, accordingly as they were, or were not spoken maliciously, were or were not pertinent to the issue; as there was or was not color for making the imputation; or as they were or were not spoken with a design to slander the witness, &c.

The privilege of a party is the same on such an occasion as that of counsel. And if either of them speak slanderous words of a witness or party, impertinently and without proper cause, an action of slander lies.

A declaration, therefore, charging an imputation of perjury to have been, made in addressing referees by a party, upon the plaintiff, a witness in the cause against the party; and that it was made falsely and maliciously, the verdict being for the plaintiff, is good on motion in arrest of judgment.

On a motion in arrest, for defects in a declaration, the court cannot look out of the record,

ALBANY,
Oct. 1827.

Ring
v.
Wheeler.

[*726]

the whole, for verbal slander, were defective in substance.

The 1st count charged, that, before the grievances complained of in the first seven counts, at a hearing before referees appointed by this court, in a cause wherein the present *defendant was plaintiff, and Meach and Allendorf were defendants, the plaintiff in this suit was examined on oath as a witness for the defendants; that his evidence was material to the issue; and that the plaintiff there, (the present *defendant,) in addressing the referees while assembled for the purpose of hearing the cause, with intent to injure and defame the present plaintiff, falsely and maliciously published of the present plaintiff, and of the evidence given by him, these false, scandalous, malicious and defamatory words: "The perjured scoundrel has sworn that I had charged him with money, which he had handed me to pay for him at the banks and elsewhere. This is false." The 2d count charged, that in the hearing of the referees, while convened for hearing and examining the matters in controversy, and after the plaintiff had given material evidence before them, the defendant, in the presence and hearing of them and others, said of the plaintiff and his evidence, "What he swore is false, and I can prove it." The 3d count charged these words to have been uttered under similar circumstances: "The facts the perjured villain has sworn to, are false, and I can prove it." The 4th count, (with similar circumstances,) charged these words: "I shall prove to you, that what he has sworn to is false." The 5th count, (under similar circumstances,) charged these words to have been spoken of the plaintiff: "That villain has perjured himself." The 6th count, (charging similar circumstances,) was, "The perjured villain has sworn to facts which I shall prove to you to be false." The 7th count, (charging similar circumstances,) was, "You (the plaintiff meaning,) are a perjured scoundrel." None of the counts except the first, charged the words expressly as having been addressed to the referees; and, after the first seven,

except for the purpose of seeing whether the verdict may not be applied to, and a judgment rendered upon good counts, though some are bad.

For this purpose only can the judge's notes at the trial be used.

none were questioned on the motion as defective. All the first seven, however, stated the words to have been pronounced in the hearing of the referees, while they were convened for the purpose of hearing and examining the matter in controversy ; and charged the words to have been spoken falsely and maliciously.

A general verdict was found for the plaintiff at the Dutchess circuit, before EMOTT, C. Judge ; a copy of whose notes were now produced by the plaintiff, to show that the evidence was applicable to the counts following the 7th ; and it was insisted, that, if the other counts *should be considered bad, the verdict might be sustained, by this court so amending the *postea,* that it should apply to the good counts only. But it will be seen, by the opinion of the court, that they did not deem it necessary to consider this branch of the case.

[*727]

*T. J. Oakley,* for the defendant. The question is, whether a man acting as counsel, or advocating his own cause, may speak harshly of a witness against him, the remark being pertinent to the cause. We contend that he is accountable at no tribunal other than the one which he addresses. Counsel should not be embarrassed by continually balancing in their minds, whether the remark he is about to make be slanderous or not. Suppose that in opening the case of a defendant, he tells the jury that a witness for the plaintiff has sworn falsely ; that he knows what he has sworn to be false ; and will prove it to be so ; are this court prepared to say, that an action of slander will lie, whether the remark be well or ill founded ? This is an ordinary occurrence. Yet was a witness ever known to bring an action, and put the counsel to prove the truth of what he said in another place ? Ought this to be so ? Such a doctrine will present a very serious embarrassment in the trial of causes. If Mr. Wheeler had simply used the language suggested, there can be no pretence that he would have been liable. And shall he be so, because he saw fit to put the case in stronger language ? The rule of law cannot be changed by such a circumstance ; and we think the autho-

ALBANY
Oct. 1827.

Ring
v.
Wheeler.

rities will sustain this motion in arrest.   Bul. N. P. 8, 10;
1 Bin. 178; 2 Burr, 807; Stark. on Slander, 207; Cro.
Jac. 90; Anth. N. P. 182; 1 B. & A. 232, 236.

*D. B. Tallmadge*, contra.   It has generally been supposed
by community, and still more generally by the profession,
that the character of counsel protects him in making any
charge; and it is well that a case is before the court in
which the question is to be settled.   We concede that

[*728]

where counsel speak pertinently to their cause, they *are
in general protected.   Where there is probable cause, they
may animadvert on witnesses and their testimony with
much freedom.   But we deny that a case can be imagined
in which they may, falsely, wilfully and maliciously do
this.   Such is the charge in the seven first counts of the
declaration; and the jury have found it to be true.   Courts
will not examine particularly.   The rule is the same as in
actions for malicious prosecution.   Probable cause is a pro-
tection.   Counsel should keep themselves within the bounds
of official duty.   They are to examine the facts; and ad-
dress the understanding of the court and jury in communi-
cating these facts.   They cannot go beyond this.   The
example put of opening counsel goes too far.   The
counsel impeaching the witness should qualify his address
by referring it to instructions from his client.   But even
with instructions, I ask whether an action should not lie
for calling a witness a perjured scoundrel?

In this case the court will not take notice that the de-
fendant was counsel.   He does not appear to be so in any
part of the declaration.   He was a party; and other coun-
sel might have been engaged in conducting the cause for
him.   The privilege contended for should not be extended
to a party, even if it belongs to counsel.   If it be, all a
man wishing to slander his neighbor has to do, will be to
bring an action, call him as a witness, and then he may
publish him to the world as a perjured scoundrel with per-
fect impunity.

*Oakley*, in reply.   The rule for which we contend, was
established with a view to secure freedom of discussion on

trials at law. The words "falsely and maliciously," used in
the declaration, are of no avail, if the facts set forth in the
declaration rebut such epithets. The court will, I think,
find the privilege for which we contend, very well estab-
lished, and very broad in its application.

*Curia*, per WOODWORTH, J. The counts in the declara-
tion charge the speaking of the words in various ways; and
the weight of evidence, as derived from the judge's notes,
is, that they were spoken while the defendant *was sum-
ming up to the referees. There is, therefore, no sufficient
ground for entering the verdict on any of the counts which
state the speaking of the words without reference to the
hearing.

[*729]

The words proved are actionable in themselves, unless
justified by the occasion and manner of speaking. If the
4th and 6th counts are defective in substance, the evidence
will warrant the application of the words to the 1st, 2d and
3d counts, which are indisputably good. There is, how-
ever, no necessity of confining the verdict to any one or
more of the counts which charge the speaking before the
referees. They are substantially the same.

The question then arises, whether these counts state a
valid cause of action. It is proper to remark here, that as
the judge's notes can be looked into for the single purpose
of ordering a judgment upon particular counts, their office
is performed when that object is answered or denied. On
the motion in arrest, we cannot look out of the record and
are, therefore, not in a situation to determine whether the
charge made by the defendant, was pertinent to the cause
or not, or whether there was anything in the evidence given
at the hearing, in the slightest degree to warrant or call for
the imputation made. The defendant has placed himself
under this disadvantage by omitting to put the facts consti-
tuting his defence upon record; and thereby presenting to
the court a view of the whole ground. We cannot take
notice of anything more than that, in the course of a trial
before referees, after the plaintiff had testified, the now de-
fendant made a charge amounting to perjury. Such is the

import of any set of these words when applied to testi-
mony material to the issue. The declaration also shows,
that the defendant was acting in the capacity of a party,
he being plaintiff in the cause : and perhaps we may recog-
nize him as a counsellor of this court, (which is the fact,)
although he is not stated to be so in the pleadings. But
if acting as a party only, I consider that the privilege
claimed for counsel equally attaches; and therefore the
omission is not material.

[*730]        *I think it follows, from this state of the case, that in
order to arrest the judgment, the court must be satisfied
that counsel are protected for words spoken by them on
the trial of a cause, although they may have been false, and
uttered wilfully and maliciously, and were irrelevant ; and
although neither the evidence nor circumstances afford a
suspicion to warrant the accusation. Admitting, as I do,
the great latitude allowable to counsel, which may frequently
be abused with impunity, I do not think the rule can legaly
be carried to the extravagant length, for which it seems
necessary the defendant should contend.

The rule, as laid down by Buller in his treatise of the
law of *nisi prius,* appears to be just and reasonable. He
observes, "The defendant may, by way of justification,
plead that the words were spoken by him as counsel in a
cause; and that they were pertinent to the matter in ques-
tion." (Bul. N. P. 10.) In *Brook* v. *Montague,* (Cro. Jac.
90,) the extent of the privilege claimed was commented
on, and some print resolved. It is there laid down
that, "a counsellor hath a privilege to inforce anything
which is informed him by his client, and to give it in evi-
dence, it being pertinent to the matter in question; and not
to examine whether it be true or false ; for a counsellor is
at his peril, to give in evidence that which his client in-
forms him, being pertinent to the matter in question ; but
matter not pertinent to the issue, or the matter in question,
he need not deliver ; for he is to discern in his discretion
what he is to deliver, and what not; and although it be
false, he is excusable, it being pertinent to the matter. But
if he give in evidence anything not material to the issue,

which is scandalous, he ought to aver it to be true; other-wise he is punishable; for it shall be considered as spoken maliciously, and without cause, which is a good ground for an action. The court further observe, "so if counsel object matter against a witness, which is slanderous, if there be cause to discredit his testimony, and it be pertinent to the matter in question, it is justifiable, what he delivers by information, although it be false." The rule thus guarded and restricted, *is undoubtedly salutary, and necessary. In the case of *M'Millan* v. *Birch*, (1 Bin 178,) this doctrine was considered. It was there held that words spoken by a party in defence, are actionable, if he does not designedly wander from the point in question, for the purpose of uttering the slander.- Chief justice Tilgham observes, " that if a man should abuse this privilege, and, under pretence of pleading his cause, designedly wander from the point in question, and maliciously heap slander upon his adversary, I will not say that he is not responsible in an action at law." We are not called upon in this case, to decide upon the particular circumstances which took place at the hearing; whether they would or would not justify the defendant. They are not before us. There is no explanation. The jury found the defendant guilty; and we are to presume the law was correctly laid down by the judge. On this motion in arrest, we are not authorized to say, what does not, and cannot appear; that the words were not spoken maliciously, that they were pertinent to the issue, that there was color for making the imputation, and that they were not spoken with design to slander the plaintiff. In the absence of all this, the conclusion must be, that the words are actionable; and that the motion in arrest be denied.(a)[1]                    Motion denied.

ALBANY
Oct. 1827.
———
Ring
v.
Wheeler.

[*731]

(a) In *Wood* v. *Gunston*, (Sty. 462,) Glyn, C. J., said, " If a counsellor speak scandalous words of one in defending his client's cause, an action doth not lie against him for so doing; for it is his duty to speak for his client; and it shall be intended to be spoken according to his client's instructions." But

[1] See the observations made by Holroyd, J., in the case of *Fairman* v. *Ives.*, 1 B. & A 645   In the case of *Hodgson* v. *Scarlett*, 2 B. & A., the same

ALBANY,
Oct. 1827.

Stutson
v.
Brown.

SUTHERLAND, J., not having heard the argument, gave no opinion.

in *Hodgson* v. *Scarlett*, (1 B. & A. 232,) Ld. Ellenborough said *Wood* v. *Gunston* carried the privilege too far; and he puts it upon the pertinency and good faith of the remarks, and allows such coloring as counsel may think justified by circumstances. Bayley, J., adopts *Brook* v. *Montague*, as laying down the true rule. The judges examine the circumstances, delivering their opinions *seriatim ;* and the result of the case is, that "an action for defamation will not lie against a barrister for words spoken by him as counsel in a cause, pertinent to the matter in issue."

---

learned judge observed, with a view to the due administration of justice, counsel are privileged in what they say; unless the administration of justice is to be fettered, they must have free liberty of speech in making their observations, which it must be remembered may be answered by the opposing counsel, and are commented on by the judge, and are afterwards taken into consideration by the jury, who have an opportunity of judging how far the matter uttered by the counsel is warranted by the facts proved; therefore, in the course of the administration of justice, counsel have a special privilege of uttering matter even injurious to an individual, on the ground that such a privilege tends to the administration of justice. And if a counsel, in the course of a cause. were to utter observations injurious to individuals, and not relevant to the matter in issue, it seems to me that he would not therefore be responsible to the party injured, in a common action for slander, but that it would be necessary to sue him in a special action on the case, in which it must be alleged in the declaration, and proved at the trial, that the matter was spoken maliciously and without reasonable and probable cause. This may be illustrated by the common case of a false charge of felony exhibite* before a justice; of the peace: there an action upon the case, as for defamation, will not lie, because the slander is uttered in the course of the administration of justice; but the party complaining is bound to allege that it was made without reasonable or probable cause. 1 Starkie on Slander, pp. 254, 255, note (*k.*)