EMILY HALSTEAD, Respondent, *v.* EDWARD B. NELSON, Appellant.

*Action for slander — what communications are privileged —.a plea of privileged communications is one of justification — Damages — what are recoverable as.*

This was an action of slander brought against the defendant, the principal of the "Central New York Institution for Deaf Mutes," for having maliciously and falsely stated to the members of the executive committee of the said institution that the plaintiff had deposited in the post-office a letter addressed to the defendant's wife, the contents of which were indecent and obscene, by reason of which slanderous words the plaintiff was discharged by the committee from her employment in the institution. The answer contained a general denial, and alleged, as a further defense, that the envelope containing the letter was received through the post-office; that it was addressed in a disguised, but apparently female hand; that the defendant, who was well acquainted with the plaintiff's handwriting, believed it to have been written by her; that he sent it, together with specimens of her handwriting to an expert in New York, who returned the papers with a report, giving the reasons for his opinion that the address was written by the plaintiff; that the defendant without malice and in good faith, for the sole purpose of doing his duty as the principal of the institution, laid the letter, the expert's report and the specimens of the plaintiff's handwriting, before the committee for them to act upon as they should think proper, and that he never charged the plaintiff with directing the envelope or having anything to do with it. He further alleged in his answer that he would give these matters in evidence in mitigation of damages and as a justification and full defense, and also that all his conduct, sayings and doings in the matter were privileged communications.

*Held,* that the communications, if made by the defendant in good faith and without malice, were *prima facie* privileged.

That the fact that the answer alleged that they would be proved as a "justification," did not prevent him from showing that they were privileged communications.

That the court erred in refusing to allow the defendant to prove that the report of the expert contained not only his opinion, but the reasons upon which it was founded, and that he laid the same before the committee at the meeting, and that they acted upon it in discharging the plaintiff.

That the court also erred in charging the jury; that the plaintiff was entitled to recover for the expense necessarily attending her coming into court to vindicate her character.

That it also erred in charging that the plaintiff might recover not only the damages already occasioned, but those that might be occasioned in the future by the speaking of the words.

APPEAL from a judgment in favor of the plaintiff, entered on a verdict rendered at the Oneida Circuit, and also from an order denying a motion for a new trial on the minutes.

*Henry A. Foster*, for the appellant.

*W. E. Scripture*, for the respondent.

SMITH, J. :

Action in slander. The defendant was the principal of the " Central New York Institution for Deaf Mutes," situated at Rome in the county of Oneida. The plaintiff was employed in the institution as superintendent of the sewing department, at a salary. The charge imputed to the defendant, so far as is material to the questions raised by the appeal, is in substance that the defendant maliciously and falsely stated to certain persons who were members of the executive committee of said institution, at a time when they were in session as such committee, that the plain tiff on the 19th of January, 1878, deposited in the post-office at Rome, a letter directed to the wife of the defendant, the matter and contents of which were indecent and obscene. The duties and powers of the executive committee were, among other things, to hire and discharge all the employes of the institution except ordinary servants. The complaint alleged that by reason of the speaking of the alleged slanderous words, the plaintiff was discharged by the board from her employment in the institution. The answer contained a general denial, and as a further defense, it alleged, among other things, that about 19th January, 1878, a sealed envelope, bearing the Rome post mark, was received through the post-office at the defendant's residence, directed on the outside in a seemingly or attempted disguised hand, but apparently in a female handwriting, to the defendant's wife by name, which, on being opened, was found to contain matter grossly insulting in its character and which gave great pain to defendant and his wife ; that defendant had in his possession many specimens of plaintiff's handwriting, had seen her write frequently, and was pretty well acquainted with her handwriting, and he was of the opinion, when he examined the direction on the envelope, that it was in the hand-

writing of the plaintiff, although it was attempted to be disguised; that without malice and for the purpose of ascertaining accurately whether the plaintiff wrote said direction, and of getting advice as to the proper course to be pursued, defendant submitted the envelope and its contents to B. J. Beach, the chairman of and one of said executive committee, and also an attorney and counselor of this court and the defendant's counsel at the time, and with his advice sent said envelope and its contents with letters and other writings of plaintiff, known by defendant to be genuine, to J. E. Paine of New York city, a skilled expert or detective of handwriting by comparison of hands, for the purpose of obtaining his opinion as to whether the handwriting on the envelope was that of the plaintiff; that said expert examined said writings, and in due time made a report to the defendant, in which he gave his opinion, and the reasons therefor, that the handwriting in all the papers was one and the same; that the defendant, relying on such opinion, without malice, and in good faith, for the sole purpose of doing his duty as principal in charge of said institution, and of placing before said executive committee such information as he had on the subject, then, for the first time, laid before said committee the expert's report, the sealed envelope and its contents, and the specimens of plaintiff's handwriting submitted to said expert, for the committee to act thereon as they should think proper; and that he never charged the plaintiff with directing said envelope or having anything to do with it. The defendant further averred in said answer that he would give in evidence the matters alleged therein, including those above-stated, in mitigation of damages, and as a justification and full defense to the action, and he also alleged that all his conduct, sayings and doings in the matter were privileged communications.

At the trial, after the plaintiff rested, the defendant gave evidence tending to show the matters alleged in the answer, as above-stated, down to and including the sending of the paper to the expert for his opinion. The expert was called as a witness and testified that he carefully examined said papers and came to the conclusion that they were all written by one and the same hand, and that he stated his conclusion in writing and sent it to the defendant. In the course of the trial the defendant offered to prove that the report sent to

him by the expert contained not only the expert's conclusion but his reasons for it; that the expert's report was laid before the executive committee at their said meeting; and that it was what they acted upon in discharging the plaintiff. The offers and the proof were objected to and excluded upon the ground, as we understand the case, that the defendant having set up the matters so offered as a justification was thereby precluded from showing that his communications were privileged.

The rulings excluding that class of evidence raise the principal question in the case. The plaintiff testified that the defendant said to the committee that the letter was obscene and he knew that the plaintiff wrote and sent it. The defendant contradicted that statement, and there was evidence in the case which would have warranted the jury in finding that the defendant did not charge the plaintiff with writing or sending the letter, but that the only communication made by him to the committee was to lay before them the report of the expert and the papers submitted to him, without expressing any opinion of his own. In either aspect of the testimony the communication, if made in good faith and without malice, was *prima facie* privileged. If the plaintiff had done the act imputed to her it went to the question of her fitness for the place she occupied, and if the defendant believed, with good reason, that the letter was written and sent by her, it was his duty as the principal of the institution to communicate the matter to the official board, by whom the employes of the institution were hired and discharged. The case falls within the rule that a communication, made *bona fide* and without malice upon any subject-matter in reference to which the party communicating has a duty, is privileged if made to a party having a corresponding duty, although it contain criminatory matter which without this privilege would be slanderous and actionable. (*Thorn* v. *Blanchard*, 5 Johns., 508; *Howard* v. *Thompson*, 21 Wend., 319; *Cook* v. *Hill*, 3 Sandf., 341; *Harrison* v. *Bush*, 22 Eng. L. & Eq., 173.) Any evidence, therefore, which went to show that the defendant had probable cause, and acted in good faith and without malice, was material to the issue, unless the averment in the answer already referred to precluded the defendant from setting up that his communications were privileged. The argument of the respondent's counsel seems to assume that the word "justification"

is used in the answer in the sense of an admission of the speaking of the slanderous words charged in the complaint and an assertion of their truth. Not at all. The answer neither asserts the truth of the words charged, nor admits, but denies, that the defendant uttered them, and it sets out the communication which it admits he did make, and the circumstances under which it was made, and asserts, in substance, that it was justified by the occasion. A plea of privileged communication is a plea of justification, and is so spoken of and treated in the books. In *Weatherston* v. *Hawkins* (1 D. & E., 111, *per* Ld. MANSFIELD) : " To every libel there may be a necessary and implied justification from the occasion." In *Ring* v. *Wheeler* (7 Cow., 730), WOODWORTH, J., cited approvingly the rule laid down in Buller's N. P., 10 : " The defendant may, by way of justification, plead that the words were spoken by him as counsel in a cause, and that they were pertinent to the matter in question." (See, also, *Lewis* v. *Few*, 5 Johns., 1 ; *per* counsel, *arguendo*, 14, 16, 17 ; *per* THOMPSON, J., 35, 36 ; *Farnsworth* v. *Storrs*, 5 Cush., 415, *per* SHAW, C. J. ; 2 Add. on Torts, 965, 966.) The defendant was therefore entitled to prove any of the circumstances alleged in his answer which tended to show that his communication to the board was in good faith and without malice. The evidence offered by him as above stated was of that character, and its exclusion was error.

In another point of view it was error to exclude evidence of the contents of the expert's report, which the board had before them when they discharged the defendant. The plaintiff claimed that she was discharged by reason of words spoken by the defendant. It was competent for the defendant to show, if he could, that the action of the board was induced by the report of the expert, in which not only his conclusion, but the reasons for it were stated ; and he made the distinct offer to show that it was upon the communication from the expert that the board acted.

The same erroneous view of the answer appeared in the charge to the jury. The defendant's counsel asked the court to charge " that the defendant being principal of the institution in which the plaintiff was employed, if the jury believe that the accusation charged in the case was made by the defendant in good faith, then the communication was privileged ; and whether the jury, upon the

evidence, believed that the plaintiff sent the letter or not, an action of slander does not lie." The judge replied: " Ordinarily I must so charge, but not in this case under the pleadings." To which ruling there was an exception. If the views above expressed are correct, the reason assigned for the refusal to charge as requested was not sound and the refusal was erroneous.

The court also erred in charging the jury that the plaintiff was entitled to recover for the expense necessarily attending the coming into court to vindicate her character. (*Hicks* v. *Foster*, 13 Barb., 663, and cases there cited by MARVIN, J.)

We are also of the opinion that it was error to charge the jury that the plaintiff might recover, not only her present damages, but also for future damages, by reason of the speaking of the words. The case is the ordinary one of defamation of character. No special ground for the allowance of prospective damages is alleged or proved, and it is not perceived how a claim for damages of that nature could be maintained. The action is given only for an injury to the plaintiff's reputation. On that ground it has been held that in cases where the words are not actionable *per se*, the pecuniary loss which is required to be shown must be the effect of the injurious imputation, upon other persons than the party bringing the action, and that inability to labor, the consequence of mental depression resulting from defamatory words not actionable in themselves, will not support the action. (*Wilson* v. *Goit*, 17 N. Y., 442.) We apprehend the true view to be taken of the matter is, that in legal theory the reputation of the plaintiff is vindicated and made whole by a verdict in his favor, and thereafter no further injury can result to him from the defamatory words which were the ground of the action.

The judgment and order should be reversed and a new trial ordered, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.

So ordered.