RAILROAD v. DELANEY.

(*Jackson.* April 15, 1899.)

1. LIBEL. *Words not actionable per se.*

A statement in a recommendation of a former employe that, "like many others, he left our service during the strike," is not libelous or actionable *per se*, so as to constitute a cause of action without special damages. (*Post, p. 295.*)

Cases cited and approved: Bowdre v. Bank, 92 Tenn., 723; Fry v. McCord Bros., 95 Tenn., 679; 91 U. S., 227.

2. SAME. *Publication.*

The delivery of a letter of recommendation for a former employe to a person who, by his authority, requested it, is not a publishing of any libel contained in it. (*Post, p. 294.*)

Cases cited: Sylvis v. Miller, 96 Tenn., 94; 24 Atl. Rep., 244.

3. SAME. *Insufficient averment of special damages.*

An averment of special damages in a libel case is insufficient in these words, to wit: "That plaintiff has been greatly injured in his business; he has been unable to obtain employment; he has been-deprived of the right to follow the vocation of his choice, to his great damage, $10,000." (*Post, pp. 295-297.*)

Cases cited: Fry v. McCord Bros., 95 Tenn., 678; 91 U. S., 225.

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

ADAMS & TRIMBLE for Railroad.

BELL & HORNE for Delaney.

18 P—19

Railroad *v.* Delaney.

McAlister, J.    Delaney commenced this suit in the Circuit Court of Shelby County against defendant company to recover damages for an alleged libel contained in the following letter:

"Kansas City, Memphis & Birmingham R. R. Co.
        "J. H. Sullivan, Supt.

                "Memphis, Tenn., May 16, 1896.

"*To Whom it May Concern*—The bearer, J. P. Delaney, worked for the company as foreman of black-smith shop, and was considered very competent. Like many others he left our service during the strike.   But I think he is thoroughly convinced that he got on the wrong track, and that no trouble from this source need be apprehended from him again.   For his family's sake I hope he may obtain employment, and I believe he will prove a faithful man hereafter.

                "J. H. Sullivan, *Supt.*"

After setting out the letter, the declaration proceeded:  "The aforesaid writing was known by the defendant to be false when it made and published the same.   The plaintiff did not leave the service of the defendant during the strike, and this fact was well known to the defendant.   The plaintiff took no part in said strike, and this fact was well known to the defendant.   The aforesaid written and published false statement was made willfully and maliciously for the purpose of injuring plaintiff in his trade and calling."

There was a demurrer to the declaration upon

the ground that it did not make any sufficient averment of special damages suffered by the plaintiff in consequence of the libelous words spoken of and concerning him. The point of the demurrer was that, the words not being libelous *per se*, the action could not be maintained without an averment of special damages. The demurrer was overruled. The defendant pleaded not guilty and justification. The latter plea, in full, is as follows: "It says that at the special instance and request of the plaintiff, one R. A. Speed, acting as the plaintiff's friend and agent, went to J. H. Sullivan, who was employed by defendant company as superintendent of operating department of its railroad, and asked him to give him, Speed, a letter addressed 'To whom it may concern,' recommending plaintiff, as well as the facts would justify, for employment, at the same time stating that he knew that said Sullivan could not give him a letter addressed to any railroad, because Delaney had been connected -in some way with the strike. He further stated to said Sullivan that if he would give him a letter of recommendation, addressed as above, he thought Delaney could get employment with the Louisville & Nashville Railroad, at Memphis. Accordingly, said Sullivan, with intent to aid and assist plaintiff, and without malice, wrote the letter, dated May 16, 1896, declared upon, and delivered the same to said Speed, to be delivered by said Speed to said Delaney. The contents of said letter were made known by said Sullivan to

Railroad *v.* Delaney.

said Speed at the time said letter was delivered, and at his urgent request, but were made known by defendant's or said Sullivan's acts to no other person.   Defendant avers that the contents of said letter are true in substance and in fact.''

On the trial below it was not controverted that the letter was written, but it was insisted that it was written at the request of plaintiff, and delivered to his agent, Mr. Speed.   The latter went to Sullivan, superintendent of the Kansas City, Memphis & Birmingham Railroad, to get a letter recommending Delaney to Captain Slusser, of the Louisville & Nashville Railroad, for employment.   Sullivan refused to give a letter to Slusser.   Thereupon Speed represented to Sullivan that Delaney was a poor man, had a large family, and would like a letter from him ''To whom it might concern;'' that it might do him some good.   After some hesitation Sullivan finally agreed to give such a letter, saying he felt sorry for Delaney, and would like to see him get something to do.   Speed testified that he showed the letter to no one, and had not communicated its contents to anyone excepting Delaney.

The record fails to show that this letter ever came to the knowledge of any persons other than Speed and Delaney.   It does show that Delaney himself showed it to Captain Slusser, master mechanic of the Louisville & Nashville Railroad at Memphis, for the purpose of securing employment.   There was evidence tending to show that on July 3, 1894, a

time long anterior, Delaney was working in the shops of defendant company, at Memphis, in the capacity of railroad blacksmith. On that day what was known as the Debs strike was begun, and the shops of defendant company were immediately closed. Delaney, it appears, was a member of the American Railway Union, and, after the shops were closed, attended a meeting of that organization at the courthouse in Memphis, and, in a public speech, stated that, as the Kansas City Railroad Company had acceded to the demands of the strikers not to haul Pullman cars, he would have nothing - to do with the strike. Delaney testified that he told Briggs, the master mechanic of defendant company, under whom he had worked, that he was ready and willing to work at any time; that Briggs asked him if he was a member of the American Railway Union, and, on his admitting that he was, Briggs discharged him. This was denied by Briggs. Evidence was introduced by the company tending to show that on the fifth or sixth of July, while the shops were still closed, it became necessary to have the rigging of a passenger coach repaired, and Briggs sent for Delaney to do the work. Delaney came, and, on being told what was wanted, said he would have to consult the Blacksmiths' Union, whereupon Briggs discharged him. Sullivan, the superintendent, was afterwards told that Delaney had been discharged for refusing to do the work required. It is claimed by Sullivan that he was acting on this information when he

stated in the letter that Delaney, "like many others, left our service during the strike."

It will be observed that this suit is not to recover damages for the breach of a contract or for discharging Delaney from the service of the company, but is for the publication of a libel based upon the following language in the letter, namely: "like many others, he left our service during the strike." It will be remembered that this letter was written at the urgent solicitation of Mr. Speed, acting as the friend of Mr. Delaney. Neither Delaney nor Speed expressed any dissatisfaction with it at the time it was written, but received it and attempted to make use of it. The only publication of the letter was in making its contents known to Speed. No witness was produced who had refused to employ Delaney on account of the letter, nor were any special damages alleged or proved.

There is no evidence of publication in this record. The proof is undisputed that this letter was written by Sullivan at the request of Mr. Speed, who was acting by authority of plaintiff. Speed accepted it and delivered it to plaintiff, who used it in seeking employment. Under the authorities the company is not liable for any of the consequences of the act of Delaney in making publication of the letter after it reached his hands. If a person receives a letter containing libelous matter, he will not be justified in publishing it. *Sylvis* v. *Miller*, 96 Tenn., 94; *Wilcox* v. *Moon*, 24 Atlantic Reporter, 244.

In view of the facts of this case, was the delivery of the letter by Sullivan to Speed a publication? Unquestionably not. It was precisely the kind of letter that Speed expected to get, and he accepted it without objection or complaint.

The Court instructed the jury that the letter was not libelous or actionable *per se*, which we hold to be correct. But when words are not libelous in themselves, it is necessary to allege in the declaration and prove special damages as a condition of recovery. *Bowdre* v. *Bank*, 92 Tenn.; *Fry* v. *McCord Bros.*, 95 Tenn., 679. The objectionable words are, "Like many others, he left our service during the strike." The Court correctly instructed the jury that these words are not libelous or actionable *per se*, because they are not of such a nature that "necessarily must or presumably will, as their natural or proximate consequence, occasion pecuniary loss without any allegation or evidence of damage other than that which is implied or presumed from the fact of publication." *Pollard* v. *Lyon*, 91 U. S., 227; *Bank* v. *Bowdre*, 92 Tenn., 736.

The letter does not contain a charge which must necessarily occasion injury, and the law requires proof, and will not presume damages. It was therefore necessary to allege and prove special damages. The allegation of damage is "that plaintiff has been greatly injured in his business; he has been unable to obtain employment; he has been deprived of the right to follow the vocation of his

Railroad *v.* Delaney.

choice, to his great damage $10,000." This allega-
tion is not sufficient. In *Lyon* v. *Pollard*, 91 U.
S., 225, the words were not actionable *per se*. The
allegation of damage was that the plaintiff had been
damaged and injured in her fame and name. The
Court said that, in such cases, the declaration must
set forth precisely in what way the special damage re-
sulted from the speaking of the words. The judgment
in that case, in favor of the plaintiff, was arrested.
In *Fry* v. *McCord*, 95 Tenn., 678, the words were
not actionable *per se*. The declaration in that case
alleged that plaintiff was greatly injured in his good
name and credit, brought into public scandal, in-
famy, and disgrace, and that he was prevented from
getting any of the necessaries of life, goods, wares,
and merchandise; that he has suffered great anxiety
and pain of mind, and become incapacitated for busi-
ness, and hence is damaged $5,000. The Court said,
viz.: "But there is no statement of any instance in
which his credit was impaired or credit refused him,
or in which he failed to procure any of the neces-
saries of life or any other particulars, nor are the
names of any persons given, nor any reasons given
for the failure to give names or identify persons."
Citing Newell on Defamation, p. 867, Sec. 41. The
Court held that, for want of proper allegation of
special damage, the declaration was bad in substance,
and reversed the ruling or demurrer and dismissed
the case.

The present case is not at all analogous to the

Railroad v. Delaney.

case of *St. Louis & Iron Mountain R. R. Co.* v. *Johnson*, decided by this Court at its April term, 1897. In that case the libel charged was "that plaintiff had been discharged for insubordination, as well as being at the head of a disreputable mob not hesitating to do anything to the injury of the company's property," etc. The Court held this language libelous *per se*, and that it was unnecessary to allege or prove special damages, since the charge was necessarily hurtful, and that, if false, plaintiff might recover general damages. In that case this Court affirmed a judgment in favor of the plaintiff for $1,500.

This case does not present such language as constitutes a libel *per se*, and, there being no special damages alleged, the action cannot be sustained. The judgment of the Circuit Court is reversed, the demurrer sustained, and the suit dismissed.

Judge McFarland being disqualified, did not participate in the decision of this case.